UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS J. HERNANDEZ,

    Plaintiffs,

Case No. 1:17-cv-327

Hon. Gordon J. Quist

v.

WILLIE SMITH, *et al.*,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants Smith, Christiansen, Schiebner, Greenfield, Jaramillo, Andrews, Ybarra, Scott, Howard, Hengesbach, Wilkinson, and Watkins' motion for summary judgment on the basis of exhaustion (ECF No. 33).

**I.    Background**

The defendants in this action include the following MDOC employees at Ionia Correctional Facility (ICF): Warden Willie Smith, Deputy Warden John Christiansen, Deputy Warden James Schiebner [listed on the docket sheet as "Scheibner"], Sgt. John Greenfield, Corrections Officer (CO) John Jaramillo, CO Dena Andrews, CO Silvero Ybarra, CO Amy Scott, Lt. Delan Howard, CO Louis Hengesbach [listed in the complaint as "Henegbasch"], CO Mark Wilkinson, and CO Dewey Watkins. Compl. (ECF No. 1, PageID.1-3); Defendants' Brief (ECF No. 34). Plaintiff also sued Dr. Roger Gerlach, identified in the complaint as "a Doctor (Dr.) at ICF". Compl. at PageID.3.

1

Plaintiff's complaint set forth the following allegations, all of which occurred at the Ionia Correctional Facility (ICF). On September 18, 2016, "[p]laintiff began a hunger strike because of the lack of control he has over his mental illness." Compl. at PageID.3. October 18, 2016, defendant Greenfield came to plaintiff's cell asked him if he wanted to be seen by health care. *Id*. at PageID.4. Plaintiff informed Greenfield that he needed help and that he was too weak to walk. *Id*. Defendant Dr. Gerlach came to plaintiff's cell and asked if he would come out for healthcare, and plaintiff also told the doctor that he was too weak to walk and needed help. *Id*. Defendant Scott came to the cell and asked if plaintiff would come out to be seen by healthcare. *Id*. Plaintiff gave her the same answer. *Id*. Scott told plaintiff that it did not matter, because they were going to get him out. *Id*.

Defendants Greenfield and Dr. Gerlach came by again and told plaintiff that they would "really like" plaintiff to attempt to come to health care. *Id*. Plaintiff repeated his response. *Id*. Dr. Gerlach then told plaintiff "that he was going to have him gassed if he didn't come out for health care." *Id*. "Plaintiff then pleaded with Defendant Roger Gerlach for help because his body was extremely weak and he would have trouble walking." *Id*. Then, defendants Christiansen, Smith, Dr. Gerlach, and Schiebner authorized defendants Greenfield, Jaramillo, Andrews, Wilkinson, Hengesbach, Watkins, and Ybarra "to use a chemical agent against Plaintiff for not being physically able to walk to health care . . . even though Plaintiff was not being disruptive." *Id*. at PageID.4-5.

After gassing plaintiff, defendants Greenfield, Jaramillo, Andrews, Wilkinson, Hengesbach, Watkins, and Ybarra, dragged plaintiff out of his cell, threw plaintiff into the shower, pulled plaintiff out of the shower, escorted plaintiff to health care, placed plaintiff back into his cell, and refused to clean the chemical agent from his cell. *Id*. at PageID.6-7. Plaintiff was left in

the "inhumane living conditions" in his cell until November 7, 2016, when he was placed back in the general population. *Id*. at PageID.7-8.

Then, on November 14, 2016, defendant Howard retaliated against plaintiff by writing a "fabricated misconduct" because plaintiff used the grievance process. *Id*. at PageID.8-9. Plaintiff alleged that on November 15, 2016, non-party Sgt. Davis reviewed the class two misconduct, which stated that plaintiff had falsified and fabricated a grievance against non-party grievance coordinator Clarice Lewis. *Id*. at PageID.9. With respect to this claim, the record reflects that Sgt. Davis reviewed the misconduct on November 14, 2016, that plaintiff refused to sign off on the misconduct, and that a copy of the misconduct was given to plaintiff. See Misconduct Report (ECF No. 34-4, PageID.169). Plaintiff's complaint omits the fact that on November 16, 2016, A/Lt. Drabek: found plaintiff guilty of the charged misconduct of "interference with administration of the rules;" found that plaintiff admitted to defendant Howard that the grievance at issue was "written prematurely and fabricated;" and found that plaintiff signed off on the grievance as "resolved." *See* Misconduct Hearing Report (Nov. 16, 2016) (ECF No. 1-1, PageID.35; ECF No. 34-4, PageID.168). After finding that plaintiff was guilty of the misconduct, A/Lt. Drabek issued plaintiff a sanction of seven days loss of privileges. *Id*. Plaintiff also attached a copy of an MDOC Class II and Class III Misconduct Appeal which denied plaintiff's claim that his due process rights were violated. *See* Appeal (Nov. 22, 2016) (ECF No. 1-1, PageID.36).[1]

In summary, plaintiff claims that defendants Smith, Christiansen, Schiebner, Greenfield, Jaramillo, Andrews, and Scott's use of chemical agent, excessive force, and his placement in inhumane living conditions violated his rights under the Eighth Amendment.

---

[1] The Court notes that an affidavit from Kristin Van Haften, Litigation Intake Analyst, MDOC Office of Legal Affairs, stated that plaintiff did not appeal the misconduct. *See* Van Haften Aff. (ECF No. 34-4, PageID.167). Based upon plaintiff's exhibit, for purposes of this motion, the Court will accept plaintiff's claim that he appealed the misconduct.

Plaintiff also claims that defendants Howard, Smith, Christiansen, and Scheibner retaliated against him by securing a misconduct conviction which violated his First Amendment right to file grievances. Compl. at PageID.12. Plaintiff seeks monetary damages and injunctive relief. *Id*. at PageID.12-13.

## II. Defendants' motion for summary judgment

### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

#### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a

problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

#### a. Plaintiff's grievances

Plaintiff's Step III grievance report indicates that he had filed two grievances in the Fall of 2016 which he pursued to Step III: ICF-16-10-1363-26a ("1363") and ICF-16-11-1491-27a ("1491). *See* MDOC Grievance Report (ECF No. 34-3).[2] Grievance 1363 named defendants Smith, Christiansen, Schiebner, Greenfield, Jaramillo, Andrews, and Scott as the individuals being grieved. Grievance 1363 (ECF No. 34-3, PageID.163). In this grievance, plaintiff claimed that on October 18, 2016, these defendants used excessive force against him by spraying him with a

---

[2] The Court notes that defendants' motion incorrectly refers to the grievances with the prefix "IBC" rather than "IFC."

6

chemical agent, because (in plaintiff's words) "I was unable to go to health care" and "No where in Policy does it state I must accept health care." *Id*. Plaintiff filed this grievance on the same date that he was sprayed with the chemical agent.

Grievance 1491 named defendants Howard, Smith, Christiansen, and Scheibner as the individuals being grieved because Howard wrote a "fabricated misconduct." It is unclear from the grievance as to how defendants Smith, Christiansen, and Scheibner were involved. Plaintiff claimed that they all retaliated against him. This grievance was rejected at Step I because plaintiff Hernandez was attempting to use the grievance process for an improper purpose:

> Issue(s) contained in the grievance are non-grievable per policy. Per PD-03.02.130, "Decisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness statements; timeliness of misconduct review; timeliness of hearing). Decisions made in minor misconduct hearings, including property disposition.

Grievance 1491 (ECF No. 34-3, PageID.158-159). Finally, defendants Ybarra, Hengesbach, Wilkinson, and Watkins were not named in either Grievance 1363 or Grievance 1491.

### b. Excessive force claims against defendants Ybarra, Hengesbach, Wilkinson, and Watkins

Plaintiff failed to properly exhaust his claims against defendants Ybarra, Hengesbach, Wilkinson, and Watkins because he did not name them in a grievance. In his response to the motion for summary judgment, plaintiff contends that when he filed Grievance 1363 "he did not know the names of everyone involved in the incident so he included the names of John Doe number's [*sic*] one through five which were used as place holders until he could determine the names of Defendants Watkins, Wilkinson, Hengesbach and Ybarra at a later date." Plaintiff's Response (ECF No. 37, PageID.173). In this grievance, plaintiff stated that he was using the names of "John Doe #1-5" for various corrections officers "until their names can be

7

obtained through the discovery process." Grievance 1363 at PageID.163. As an initial matter, plaintiff's explanation regarding his failure to name these four defendants is not in the form of an affidavit or declaration. Furthermore, plaintiff's explanation is without merit. Policy Directive 03.02.130 ¶ R requires that a grievance must include "names of all those involved in the issue being grieved." Plaintiff cites no MDOC policy which allows him to defer naming the parties grieved, file a grievance against unknown parties, or conduct discovery to identify the people he is grieving. In summary, plaintiff has failed to properly exhaust a claim against defendants Watkins, Wilkinson, Hengesbach and Ybarra. *See Jone.s*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Finally, Grievance 1363 only exhausted plaintiff's claim that defendants used excessive force when they applied the chemical agent on October 14, 2016; the grievance did not address plaintiff's allegation that defendants threw him into the shower, pulled him out of the shower, and refused to clean the chemical agent from his cell. Accordingly, defendants Watkins, Wilkinson, Hengesbach and Ybarra are entitled to summary judgment and should be dismissed from this action, and plaintiff's excessive force claim should be limited to the alleged use of the chemical agent on October 14, 2016.

      **c.**      **Retaliation claims against defendants Howard, Smith, Christiansen, and Scheibner**

Grievance 1491 claimed that defendants Howard, Smith, Christiansen, and Scheibner retaliated against him. As discussed, this grievance was rejected because it did not comply with Policy Directive 03.02.130. Based on this record, plaintiff failed to properly exhaust the grievance. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendant Howard should be granted summary judgment and dismissed from this action, and defendants Smith, Christiansen, and Schiebner should be granted summary judgment with respect to plaintiff's retaliation claim.

### III. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment on the basis of exhaustion (ECF No. 33) be **GRANTED**. Consistent with that recommendation, defendants Watkins, Wilkinson, Hengesbach, Ybarra, and Howard should be **DISMISSED** from this action, plaintiff's retaliation claims against all defendants should be **DISMISSED**, and plaintiff's excessive force claims against defendants Smith, Christiansen, Schiebner, Greenfield, Jaramillo, Andrews, and Scott should proceed with respect to the use of the chemical agent on October 18, 2016.


Dated: October 31, 2017                        /s/ RAY KENT
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).