UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARLOS J. HERNANDEZ,

              Plaintiff,

v.

WILLIE SMITH, *et al.*,

              Defendants.

_____/

Case No. 1:17-cv-327

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner at a Michigan Department of Corrections (MDOC) facility pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendant Roger Gerlach, M.D.'s motion for summary judgment (ECF No. 57).

## I.       Background

Plaintiff filed a complaint against Dr. Gerlach and 12 employees of the Michigan Department of Corrections (MDOC). Compl. (ECF No. 1). On September 28, 2016, plaintiff began a hunger strike "because of the lack of control he has over his mental illness." *Id*. at PageID.3. According to plaintiff, he "is mentally ill with the diagnosis of schizo-affective disorder, mood disorder, and personality disorder which is uncontrollable without the use of psychotropic medication," and was not taking his prescribed psychotropic drugs due to his hunger strike. *Id*. While plaintiff complains about his apparent failure to receive treatment for mental illness, he also made stated that "[n]o where in MDOC policy or procedure does it state that

1

plaintiff must accept health service and procedures". *Id*. at PageID.6-7.   Plaintiff further alleged

that he can refuse medical treatment without consequence pursuant to MDOC Policy Directive

043.04.105.   *Id*. at PageID.8.   Plaintiff's claims against defendant Dr. Gerlach are set forth

below (in his words):

> 19. October 18, 2016, Defendant Roger Gerlach approached Plaintiffs cell door and asked him if he would come out for health care, at this time Plaintiff informed Defendant Roger Gerlach that he was to weak to walk and that he needed help to come out. This incident took place at or around 7:00 a.m. - 9:41 a.m.

> \*     \*     \*

> 21. October 18, 2016, Defendant's Unknown Greenfield and Roger Gerlach came back to Plaintiff's cell and told him that they would really like Plaintiff to attempt to come out for health service.   Plaintiff again informed both Defendant's that he could not walk and needed help to attend the health service call-out. This incident took place at or around 7:00 a.m.- 9:41 a.m.

> 22. Defendant, Roger Gerlach informed the Plaintiff that he was going to have him gassed if he didn't come out for health care, Plaintiff then pleaded with Defendant Roger Gerlach for help because his body was extremely weak and he would have trouble walking. This incident took place at or around 7:00 a.m. - 9:41 a.m.

> \*     \*     \*

> 24. October 18, 2016, Defendant Roger Gerlach authorized Defendants Unknown Greenfield, John Jaramillo, J. Andrews, Unknown Wilkinson, L. Henegbasch, Unknown Watkins, Unknown Ybarra to use a chemical agent against Plaintiff for not being physically able to walk to health care, and even though Plaintiff was not being disruptive in any way and was not a threat to staff, the Defendant's still used the chemical agent. This incident took place at or around 7:00 am. - 9:41 a.m.

Compl. at PageID.4-5.

Plaintiff also alleged that three other MDOC officials, defendants Deputy Warden

Christiansen, Warden Smith, and Deputy Warden Schiebner, authorized corrections officers "to

use a chemical agent against Plaintiff for not being physically able to walk to health care . . . even

though Plaintiff was not being disruptive." *Id*.   Even though plaintiff was not a threat to

defendants, Sgt. Greenfield sprayed him in the face with the chemical agent, causing him to choke and experience "agonizing pain and burning".   *Id*. at PageID.6-7.

Plaintiff did not set forth any particular cause of action against Dr. Gerlach. Rather, plaintiff alleged the following claim against all defendants:

> The unjust use of a chemical agent, excessive use of force, and inhumane living conditions violated Plaintiff Carlos Jose Hernandez rights and constituted cruel and unusual punishment under the Eighth Amendment to the United States Constitution.

*Id*. at PageID.12.

Plaintiff has two Eighth Amendment claims against Dr. Gerlach.   First, that Dr. Gerlach violated his Eighth Amendment right to be free from cruel and unusual punishment by authorizing the use of a chemical agent to extract him from the cell on October 18, 2016.   Second, that Dr. Gerlach violated his Eighth Amendment right by being deliberately indifferent to his serious medical needs related to his hunger strike, e.g., the doctor refused to assist plaintiff out of the cell on October 18, 2016.[1]

For his relief, plaintiff seeks $75,000.00 of compensatory damages and $150,000.00 of punitive damages against each defendant.   *Id*.   Plaintiff also seeks a permanent injunction against Dr. Gerlach and others "to immediately stop using chemical agents on mentally ill prisoners."   *Id*. at PageID.13.

---

[1] In his response, plaintiff refers to a "conspiracy" involving Dr. Gerlach.   Plaintiff's Response (ECF No. 63, PageID.367).   Plaintiff's complaint did not allege any conspiracy and such a claim is not part of this lawsuit.

## II.      Dr. Gerlach's motion for summary judgment

### A.      Legal standard for summary judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.   Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).   "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."   *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).   However, the Court is not bound to blindly adopt a non-moving party's version of the facts.   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable

4

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.      Eighth Amendment violations

### 1.      Legal standard

### a.      Eighth Amendment claim for use of chemical agent

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

In his first claim, plaintiff contends that Dr. Gerlach violated his Eighth Amendment rights by authorizing the other defendants to use a chemical agent on him for a cell extraction. The Cruel and Unusual Punishments Clause of the Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). "The Eighth Amendment prohibits punishments that 'involve the unnecessary and wanton infliction of pain,' including inflictions of pain that 'are totally without penological justification.' " *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (quoting *Rhodes*, 452 U.S. at 346). A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a

5

constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).   A prison official violates the Eighth Amendment only when the prisoner can establish both the objective component and the subjective component of the claim.   *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994).   The objective component requires that the pain inflicted be "sufficiently serious."   *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).   The relevant inquiry for the subjective component is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."   *Hudson*, 503 U.S. at 6 (internal quotation marks omitted).

The use of chemical agents may be necessary for compelling prison inmates' compliance with prison officials' orders. *See Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992). The use of chemical agents such as mace to control a prison inmate is not malicious or sadistic *per se*, *see Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002), and the use of such agents does not constitute cruel and unusual punishment if reasonably necessary to subdue recalcitrant prisoners. *See Jennings v. Peiffer*, 110 Fed. Appx. 643, 646 (6th Cir.2004) (affirming grant of summary judgment to defendant officer because the officer did not act maliciously or sadistically in spraying a chemical agent to secure plaintiff prisoner's compliance with an order).   "Indeed, several courts, including this one, have suggested that the use of chemical agents is preferable to physical confrontation."   *Catt v. Brown*, No. 1:17-cv-513, 2017 WL 2991714 at *2 (W.D. Mich. July 14, 2017), citing *Caldwell*, 968 F.2d 595 at 602; *Soto v. Dickey*, 744 F.2d 1260, 1262 (7th Cir. 1984); and *Alspaugh v. Dahl*, No. 2:07-cv-136, 2008 WL 4425813 at *1 (W.D. Mich. Sept. 26, 2008).

b.        **Eighth Amendment claim for deliberate indifference**

In his second claim, plaintiff contends that Dr. Gerlach violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs.  It is well established that an inmate has a cause of action under § l983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976).   As discussed, a viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834.   In the medical context, the objective component typically involves the failure to treat a serious medical condition.   *Hudson,* 503 U.S. at 8-9.   "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to the inmate's health or safety.   *See Wilson*, 501 U.S. at 302-03.   To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.   Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.   *Id.* at 835.   "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."   *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

7

### 2.      Plaintiff's medical records

The medical records reflect the following interactions between Dr. Gerlach and plaintiff commencing on September 28, 2016, the date plaintiff allegedly started his hunger strike. On September 29th, Dr. Gerlach performed a chart review of plaintiff's MDOC medical records and determined that no further action was required at that time.   Medical Records (ECF No. 59-1, PageID.333).   On October 3rd Dr. Gerlach evaluated plaintiff because he was engaged in a hunger strike.   *Id*. at PageID.334.   At that time, the medical records documented that plaintiff had lost ten pounds over the past two weeks with no pertinent negatives.   *Id*.   The doctor noted that plaintiff was "WELL KNOWN TO US FROM SUMMER 2015 WHEN HE WENT A PERIOD WITHOUT EATING W/O ADVERSE SEQUELAE."   *Id*. (emphasis in original).   The doctor noted that plaintiff had been transferred to the prison two weeks ago, placed in administrative segregation, and has not accepted a food tray for the last four or five days.   *Id*.   The doctor noted that plaintiff "admits he is not trying to die or hurt himself but to bring attention to his demands for his property, better water, and likely to get transferred out of seg."   *Id*.   Plaintiff appeared healthy, talkative and animated.   *Id*.   The plan was to have plaintiff undergo lab work and see a physician assistant later in the week; however, plaintiff stated, "i [sic] will not be coming [sic] out anymore."   *Id*.   At that point, the doctor "carefully reviewed the risk and danger of prolonged hunger striking" with plaintiff.   *Id*. The doctor further noted that "Patient refused treatment recommendations."   *Id*. at PageID.336.

On October 10th, plaintiff was a "no-show" for his hunger strike evaluation.   *Id*. at PageID.340.   The doctor noted that plaintiff "refused to get out of bed, come to cell door, or come out of cell to see me on seg rounds today."   *Id*. at PageID.338.   The doctor noted that he

8

would request lab work, follow up later in the week, and discuss with the HUM (housing unit manager). *Id*.

On October 17th, plaintiff again failed to go to his scheduled hunger strike evaluation. *Id*. at PageID.341.

On October 18th, the medical records reflect that plaintiff "was extracted from cell after refusing to come out" for his hunger strike evaluation. *Id*. at PageID.342. The doctor noted that plaintiff's weight has not changed much, with a maximum loss of 15 pounds over the past four weeks. *Id*. Plaintiff refused to talk, refused to give any reason for not eating, and "adamantly refused lab draw." *Id*. The doctor appeared to question whether plaintiff was actually on a hunger strike, noting "He walked fine, hydration clinically good, and this just doesnt [sic] fit with someone who hasnt [sic] eaten in 3+ weeks??!!" *Id*. The doctor noted that plaintiff discussed his compliance with diet, voiced understanding of patient education provided, but refused treatment recommendations. *Id*. at PageID.343.

On October 24th, the doctor noted that plaintiff appeared at his hunger strike evaluation and he "surprisingly came out of cell eagerly w/o any pleading." *Id*. at PageID.345. The doctor noted that plaintiff was walking easily, his weight was down five pounds from the past week, and that he was in no distress. *Id*. When asked about the reason for not eating, plaintiff stated "psych won't listen to me or give me the meds i [sic] need." *Id*. Plaintiff agreed to have a blood draw. *Id*. The doctor noted that after a three-week hunger strike plaintiff had moderate weight loss but no signs of starvation or severe dehydration. *Id*. The doctor again counseled plaintiff and advised of potential harm of him not eating or drinking. *Id*.

9

### 3.     Affidavits submitted by defendant Dr. Gerlach

Dr. Gerlach submitted an affidavit in which he stated:  that he is a licensed physician employed as the Medical Director and site physician at ICF since April 2013; that he did not have the authority to direct the use of force against prisoners, including but not limited to the use of chemical agents; and that he did not direct the use of chemical agents against plaintiff on October 18, 2016 or at any other time.   Dr. Gerlach Aff. (ECF No. 57-1, PageID.319, 321). The doctor also set forth a chronology of plaintiff's treatment as set forth in the medical records. *Id*. at PageID.320-321.

Dr. Gerlach also submitted an affidavit from ICF Deputy Warden John Christiansen, which stated that Dr. Gerlach had no authority to direct use of force against prisoners and provided in pertinent part:

> 4. MDOC Corrections staff make decisions regarding when and how it is appropriate to use force, including chemical agents, in handling inmates.
>
> 5. MDOC Corrections staff do not take direction from medical providers regarding when and how to use force, including chemical agents.
>
> 6. Roger Gerlach, M.D. does not have the authority to direct use of force nor did he direct the use of force against Carlos Hernandez #492576 on October 18, 2016.
>
> 7. On October 18, 2016, I authorized the use of chemical agents to remove prisoner Hernandez from his cell for a healthcare evaluation due to his hunger strike.
>
> 8. Prisoner Hernandez refused to come to the cell door to be placed in restraints by unit staff, to be taken to the dayroom and meet with Dr. Gerlach.

Christiansen Aff. (ECF No. 57-3, PageID.323-324).

4.        **Affidavits and declarations submitted by plaintiff**

Plaintiff opposed the motion with a verified complaint[2] and various affidavits and declarations. Based on the verified complaint, the Court will consider the allegations against Dr. Gerlach which were not based on information and belief to have the same force and effect as an affidavit. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (a verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment).

Plaintiff also submitted an "affidavit" in which he stated additional facts in support of his claim: that on October 18, 2016, Dr. Gerlach came to his cell door "numerous times" asking him to go to health service; that each time plaintiff responded that "I was too weak to walk and needed help;" that each time Dr. Gerlach "threatened me with a chemical agent;" that Dr. Gerlach "had me forcefully extracted from my cell by use of a chemical agent because I asked for help to go to health service;" that the use of the chemical agent was not necessary because "health care staff could have been escorted into my cell;" and that the use of a chemical agent was not required because "[a]t no time was I disruptive, creating a disturbance or being threatening."   Hernandez Aff. (ECF No. 63-1, PageID.385-387).

This document is neither an affidavit nor a declaration which can create a genuine issue of material fact for purposes of opposing a motion for summary judgment.   As discussed

---

[2] Plaintiff's complaint included a "verification" stating:

"I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true.   I certify under penalty of perjury that the foregoing is true and correct."

Compl. at PageID.14.   Plaintiff's statement was acknowledged, affirmed and witnessed by a notary public.   *See* M.C.L. §§ 55.265(a) and 55.285.

below, plaintiff structured this document as a sworn statement, but a notary did not administer an oath or acknowledge the document.

Given this defect, the Court will review plaintiff's document as an unsworn declaration under penalty of perjury made pursuant to 28 U.S.C. § 1746, which provides that in any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury."  28 U.S.C. § 1746(2).  Such statements must be made in substantially the following form "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2).

Here, plaintiff's affidavit/declaration did not comply with the requirements of § 1746 because plaintiff did not declare that his statements were "true and correct" as required by the statute.   Rather, plaintiff added qualifiers to that language stating:

> I Carlos Jose Hernandez, swear under Penalty of Perjury that the following facts are true *to the best of my knowledge, belief, and understanding* and if called on to testify to these facts I am competent.

*Id*. at PageID.385 (emphasis added).   Because plaintiff did not declare that his statements were "true and correct" as required by § 1746, this document is not a declaration which can be used as a substitute for an affidavit under § 1746(2).

For these reasons, plaintiff's affidavit/declaration cannot be used to rebut the facts set forth in the affidavits submitted by Dr. Gerlach and Deputy Warden Christiansen.  *See* Fed.

Rules Civ. Proc. 56(c)(4) (a declaration used to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").  *See Totman v. Louisville Jefferson County Metro Government*, 391 Fed. Appx. 454, 464 (6th Cir. 2010) (to constitute evidence sufficient to support or oppose a motion for summary judgment, an affidavit "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated;" thus, a complaint which included a verification stating facts that are true and correct to the best of the affiant's "knowledge and belief" indicated that the allegations of the complaint went beyond the plaintiff's personal knowledge, that the allegations extended to matters within the plaintiff's "beliefs," and that the plaintiff's "beliefs" did not meet the evidentiary standard set forth in Fed. Rules Civ. Proc. 56(e)(1) (predecessor to Fed. Rules Civ. Proc. 56(c)(4)).   As the Court observed in *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 139 (2d. Cir. 2009), "the common expression 'to the best of my knowledge'  .  .  . seems to inject a level of uncertainty into just how sure the declarer is of the truth of the asserted fact."    Similarly, plaintiff's use of the expression "to the best of my  .  .  .  understanding" also injects a level of uncertainty as to the truth of the facts asserted.   "[F]acts alleged on 'understanding' like those based on 'belief' or on 'information and belief', are not sufficient to create a genuine issue of fact."  *Cermetek, Inc. v. Butler Avpak, Inc.*, 573 F.2d 1370, 1377 (9th Cir. 1978).  *See also, Ondo v. City of Cleveland*, 795 F.3d 597, 604-05 (6th Cir. 2015) (an affiant's statement based upon his "belief" does not demonstrate the personal knowledge required by Rule 56).   Accordingly, the Court will not consider plaintiff's affidavit/declaration as sufficient to rebut defendants' affidavits, specifically with respect to (1) the fact that Dr. Gerlach did not have the

13

authority to direct the use of a chemical agent against plaintiff, and (2) the fact that Dr. Gerlach did not direct the use of chemical agents against plaintiff on October 18, 2016.

For these same reasons, the affidavits and declarations submitted by plaintiff from prisoners Lentz, Kendall, Flores, Harris and Gardner are not sufficient to establish facts or rebut defendants' affidavits: Affidavit of G. Lentz #655484 (stating "I swear under penalty of perjury that the foregoing is true to the best of my knowledge, belief and understanding.")[3]; Affidavit of Alan Kendall #254798 (a declaration signed "under penalty of perjury that the foregoing is true to the best of my knowledge, belief and understanding"); Affidavit of David Flores #196450 (a declaration signed "under penalty of perjury that the foregoing is true to the best of my knowledge, belief and understanding"); Affidavit of Willie Harris #292201 (a declaration under § 1746 which is "true to the best of my belief and knowledge"); and, Declaration of D. Gardner #247292 (in an un-notarized document labeled a declaration under § 1746, Gardner states "I swear that the foregoing is true and correct to the best of my knowledge, understanding and belief"). *See* PageID.388-394, 397-401.

Plaintiff did submit a declaration from Don'Tre Williams #576094 which was in the proper form as required under § 1746. PageID.395-396.   In this declaration, Williams states

---

[3] With respect to prisoner Lentz, the Court notes that while a notary public signed the last page of the affidavit, there was no jurat.  *See* M.C.L. § 55.265(a) (defining a "jurat" as "a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and *taken an oath or affirmation vouching for the truthfulness of the signed record*") (emphasis added).   The absence of a jurat or other evidence of verification requires a court to find that the document fails to constitute an affidavit.  *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished).  *See Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930) ("[a] purported affidavit, on which perjury could not be assigned if it was willfully false, would not, in law, be an affidavit at all"); *People to Use of Esper v. Burns*, 161 Mich. 169, 173, 125 N.W. 740 (1910) ("[a]n affidavit has been defined to be a declaration on oath, in writing, sworn to by a party before and attested by some person who has authority to administer oaths").

that on October 18, 2016, he was housed at ICF in Unit 2, cell no. 11, while plaintiff was in the

same unit in cell no. 26.   PageID.396.   Prisoner Williams recounted the following facts:

> On October 18, 2016, I witnessed Sgt. Unknown Greenfield, Correctional
> officer Amy Scott and Doctor Roger Gerlach go to the Plaintiff's cell door and ask
> him if he wanted to come out for health care, at which time the Plaintiff told the
> above MDOC staff that he was too weak to walk.   Roughly fifteen minutes later
> Sgt. Unknown Greenfield, John Jaramillo, Unknown Wilkinson, Unknown
> Watkins, J. Andrews, L. Henegbashch [sic] and Unknown Ybarra used a chemical
> agent without a just cause on the Plaintiff.   I witnessed the Defendant's remove the
> Plaintiff from cell twenty-six (26) by forcefully dragging him down the hallway to
> the shower, where he was no longer in my line of sight.   I never heard the
> Defendant's [sic] offer the Plaintiff any help to go to health care.

Williams Decl. at PageID.396.

**5.      Discussion**

**a.      Dr. Gerlach authorized use of a chemical agent**

Plaintiff's claim that Dr. Gerlach violated his Eighth Amendment rights by

authorizing MDOC officers to apply a chemical agent fails.   "Because § 1983 liability cannot be

imposed under a theory of *respondeat superior*, proof of personal involvement is required for a

supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir.

2005).   "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly

authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending

subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).   Both Dr. Gerlach and

Deputy Warden Christiansen stated in their affidavits that the doctor did not have the authority to

direct the use of force against plaintiff.   Rather, Deputy Warden Christiansen stated that *he*

authorized the use of chemical agents to remove plaintiff from his cell for a healthcare evaluation

due to his hunger strike. Accordingly, defendant Dr. Gerlach should be granted summary judgment

with respect to that claim.

15

### b.   Dr. Gerlach was deliberately indifferent to plaintiff's medical needs

Plaintiff's claim that Dr. Gerlach violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs also fails.   Even if the Court assumes that plaintiff's allegation is true, "that he could not walk [on October 18th] and needed help to attend the health service call-out," this statement does not establish that the doctor violated plaintiff's constitutional rights.   The medical records reflect that plaintiff was not suffering from any debilitating symptoms from his hunger strike.   The present situation developed after plaintiff refused to attend his examinations on October 10th and 17th.   When the doctor examined plaintiff after the cell extraction on October 18th, he noted that plaintiff walked fine, that plaintiff's hydration was "clinically good", and that plaintiff's condition "just doesnt [sic] fit with someone who hasnt [sic] eaten in 3+ weeks."   PageID.342.

Given plaintiff's physical condition, even if Dr. Gerlach denied plaintiff's request for assistance in getting to health care on October 18th, this single incident did not constitute deliberate indifference to plaintiff's serious medical needs.   Plaintiff did not establish either the objective or subjective component of an Eighth Amendment claim.   As discussed, the doctor had been monitoring plaintiff's condition and counselling plaintiff since he commenced the hunger strike.   "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."   *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (internal quotation marks omitted).   Accordingly, Dr. Gerlach should be granted summary judgment on this claim.

16

## III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Dr.

Gerlach's motion for summary judgment (ECF No. 57) be **GRANTED** and that he be

**DISMISSED** from this action.


Dated:   August 10, 2018                                    /s/ Ray Kent
                                                            United States Magistrate Judge


**ANY OBJECTIONS** to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.   All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).   Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.   *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).